1  JEREMIAH REYNOLDS (SBN 223554)
   jreynolds@eisnerlaw.com
2  ZACHARY T. ELSEA (SBN 279252)
   zelsea@eisnerlaw.com
3  EISNER, LLP
   433 N. Camden Dr., 4th Floor
4  Beverly Hills, California 90210
   Telephone: (310) 855-3200
5  Facsimile: (310) 855-3201

6  Attorneys for Defendant
   Micah Williams p/k/a Katt Williams
7

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  ANGELINA TRIPLETT-HILL,              Case No. 2:16-cv-06196-CAS-GJS

12              Plaintiff,               *Hon. Christina A. Snyder*

13        vs.                            **DEFENDANT KATT WILLIAMS'
                                         RULE 16-4 MEMORANDUM OF
14  MICAH WILLIAMS p/k/a KATT            CONTENTIONS OF FACT AND
    WILLIAMS; and DOES 1-5,              LAW**
15
                Defendants.
16                                       Judge:      Hon. Christina A. Snyder
17                                       Trial Date: October 8, 2024
                                         Time:       9:30 a.m.
18                                       Location:   350 West 1st Street
                                         Courtroom:  8D
19

20

21

22

23

24

25

26

27

28

EISNER, LLP

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     CLAIMS AND DEFENSES [16-4.1] ............................................................ 1

    A.      SUMMARY OF PLAINTIFF'S CLAIMS ............................................ 1

        1.      Battery ...................................................................................... 1

            (a)     Elements Of The Claim ............................................... 1

            (b)     Summary Of Evidence In Opposition ......................... 2

        2.      Assault ..................................................................................... 4

            (a)     Elements Of The Claim ............................................... 4

            (b)     Summary of Evidence In Opposition .......................... 4

        3.      Intentional Infliction Of Emotional Distress ............................. 6

            (a)     Elements Of The Claim ............................................... 6

            (b)     Summary Of Evidence In Opposition ......................... 6

        4.      Negligence ............................................................................... 8

            (a)     Elements Of The Claim ............................................... 8

            (b)     Summary Of Evidence In Opposition ......................... 8

        5.      Constructive Wrongful Termination In Violation Of Public Policy ............................................................................ 10

            (a)     Elements of the Claim ............................................... 10

            (b)     Summary of Evidence In Opposition ........................ 10

III.    ANTICIPATED EVIDENTIARY ISSUES [16-4.2(h)] ................................ 13

IV.     BIFURCATION ISSUES [16-4.3] ............................................................... 13

V.      JURY TRIAL DEMAND .............................................................................. 13

VI.     ATTORNEY FEES [16-4.5] ........................................................................ 13

VII.    CONCLUSION/RESERVATIONS .............................................................. 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009)..............................................................................6

*Ladd v. County of San Mateo*,
    12 Cal. 4th 913 (1996)................................................................................8

*So v. Shin*,
    212 Cal. App. 4th 652 (2013)..................................................................2, 4

**Other Authorities**

California Civil Jury Instruction (CACI) No. 1300....................................................2

California Civil Jury Instruction (CACI) No. 1301....................................................4

California Civil Jury Instruction (CACI) No. 1600....................................................6

California Civil Jury Instruction (CACI) No. 2432..................................................10

California Civil Jury Instruction (CACI) No. 400......................................................8

Pursuant to Local Rule 16-4, Defendant Katt Williams ("Defendant" or "Williams") submits the following Memorandum of Contentions of Fact and Law.

## I. <u>INTRODUCTION</u>

This is a personal injury action in which Plaintiff Angelina Triplett-Hill ("Plaintiff" or "Triplett-Hill") contends she served as the "personal assistant" of Williams from approximately 2003 to 2014.  Plaintiff contends that on September 12, 2014, Williams struck her in the face, causing her to lose consciousness and suffer an injury to her face.

Williams contends that (1) Plaintiff never served as his personal assistant and has invented the story; (2) he met her for the first time in or around September 2014 after she reached out to him on social media; and (3) that he never laid a hand on Plaintiff.

The Los Angeles Police Department investigated the alleged incident and found no evidence or witnesses whatsoever to support Plaintiff's claim.  The Los Angeles Fire Department also responded at the scene of the alleged incident and found no injuries to Plaintiff.  Plaintiff was sent to UCLA Hospital, but the medical staff also found no injuries to Plaintiff.

With respect to Plaintiff's claim that she had been employed by Defendant, Plaintiff's fabricated story will be refuted by the testimony of Williams' *actual* assistant, Lena Smith, at trial.  Plaintiff similarly has zero documentary evidence to support her claim—no contract, no offer letter, no paystubs, no cashed checks, no tax records, no emails, no texts, and no evidence of services rendered.

## II. <u>CLAIMS AND DEFENSES [16-4.1]</u>

### A.    SUMMARY OF PLAINTIFF'S CLAIMS

#### 1.    Battery

##### (a)    Elements Of The Claim

"The essential elements of a cause of action for battery are:

(1) defendant touched plaintiff, or caused plaintiff to be touched, with the

1    intent to harm or offend plaintiff;

2         (2) plaintiff did not consent to the touching;

3         (3) plaintiff was harmed or offended by defendant's conduct; and

4         (4) a reasonable person in plaintiff's position would have been offended by

5    the touching."

6    *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013); *see also* California Civil Jury

7    Instruction (CACI) No. 1300.

8                    **(b)    Summary Of Evidence In Opposition**

9         Plaintiff contends that Williams struck her in the face in September 2014 and

10   that she lost consciousness and fell to the ground.  However, in addition to

11   numerous internal contradictions and a complete lack of eyewitness corroboration,

12   Plaintiff's story is completely refuted by the contemporaneous EMT, police, and

13   medical reports—all of which indicate that Plaintiff suffered no injury at all.

14        An emergency medical technician ("EMT") from the Los Angeles Fire

15   Department ("LAFD") was called to the scene at the time Plaintiff alleges she was

16   injured.  The LAFD report indicates that Plaintiff had suffered "[n]o obvious signs

17   of trauma." (Ex. 2 at Triplett 00058.)  Plaintiff's Glascow Coma Score was 15 (the

18   highest possible), indicating that she was fully alert, conscious, responsive, and

19   functioning regularly at the time.  (*Id*.)

20        The contemporaneous report from the Los Angeles Police Department

21   ("LAPD") likewise indicates that "Vict did not complain of any pain to her face and

22   did not have any injuries to her face."  (Ex. 5 at Triplett000019.)  It states further

23   that "Dr. Halem did not obs any injuries to Vict's face."  (*Id*.)  The police report

24   states simply, "Evid.: 0."  (*Id*.)  Additionally, on the first page of the report, there is

25   a check mark next to a box stating, "No Serious Injury To Victim."  (*Id*. at

26   Triplett000018.)  The report adds that "[d]uring the investigation, Vict did not

27   appear to be making sense at times."  (*Id*. at Triplett000019.)

28        Plaintiff was admitted to UCLA Medical Center shortly after the alleged

incident, and the medical records from that stay also directly contradict Plaintiff's claims that Defendant punched her in the face.  The initial providers found no evidence of trauma: "Physical Exam. Nursing note and vitals reviewed. Constitutional: She appears well-developed and well-nourished. No distress. Neurological: She is alert. She has normal strength. No cranial nerve deficit or sensory deficit. Psychiatric: She has a normal mood and affect. Her behavior is normal."  (Ex. 25 at UCLAHEALTH_0000011.)

The records also explicitly state that there was no evidence that Plaintiff had been punched.  The UCLA medical records state as follows: "Pt reports being puched [sic] in face on left, then LOC and awoke on ground with left sided neck pain, c/o 10/10 pain. *However no e/o trauma to face or head. CT brain/face and xrays of c spine are all negative for any significant injury.* Chronic htn off meds, also of very angry after reported altercation to LAPD here. Stable for d/c."  (Ex. 25 at UCLAHEALTH_0000013.) (emphasis added). The records further state, "Patient states that she was assaulted yesterday evening by her employer; however, there is no eye witness account to the altercation. Medical workup including CT face/brain with no evidence of fracture. [O]ffered for the patient to file a police report, she declined."  (Ex. 25 at UCLAHEALTH_0000023.)

Finally, Plaintiff's own statements to the UCLA medical providers also directly contradict her allegations in this case. While Plaintiff alleges that she was knocked unconscious, the records state that "She denies any LOC or fall 2/2 assault." (Ex. 25 at UCLAHEALTH_0000020.)

In summary, the contemporaneous and objective records of three government agencies—the LAFD, the LAPD, and UCLA Medical Center—all refute Plaintiff's claims and indicate that she was never struck by Williams and that she suffered no injuries.

## 2. Assault

### (a) Elements Of The Claim

"The essential elements of a cause of action for assault are:

(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner;

(2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat;

(3) plaintiff did not consent to defendant's conduct;

(4) plaintiff was harmed; and

(5) defendant's conduct was a substantial factor in causing plaintiff's harm."

*So v. Shin*, 212 Cal. App. 4th 652, 669 (2013); *see also* California Civil Jury Instruction (CACI) No. 1301.

### (b) Summary of Evidence In Opposition

Plaintiff contends that Williams struck her in the face in September 2014 and that she lost consciousness and fell to the ground.  However, in addition to numerous internal contradictions and a complete lack of eyewitness corroboration, Plaintiff's story is completely refuted by the contemporaneous EMT, police, and medical reports—all of which indicate that Plaintiff suffered no injury at all.

An EMT from LAFD was called to the scene at the time Plaintiff alleges she was injured.  The LAFD report indicates that Plaintiff had suffered "[n]o obvious signs of trauma." (Ex. 2 at Triplett 00058.)  Plaintiff's Glascow Coma Score was 15 (the highest possible), indicating that she was fully alert, conscious, responsive, and functioning regularly at the time.  (*Id.*)

The contemporaneous report from the LAPD likewise indicates that "Vict did not complain of any pain to her face and did not have any injuries to her face."  (Ex. 5 at Triplett000019.)  It states further that "Dr. Halem did not obs any injuries to Vict's face."  (*Id.*)  The police report states simply, "Evid.: 0."  (*Id.*)  Additionally,

on the first page of the report, there is a check mark next to a box stating, "No Serious Injury To Victim." (*Id*. at Triplett000018.) The report adds that "[d]uring the investigation, Vict did not appear to be making sense at times." (*Id*. at Triplett000019.)

Plaintiff was admitted to UCLA Medical Center shortly after the alleged incident, and the medical records from that stay also directly contradict Plaintiff's claims that Defendant punched her in the face. The initial providers found no evidence of trauma: "Physical Exam. Nursing note and vitals reviewed. Constitutional: She appears well-developed and well-nourished. No distress. Neurological: She is alert. She has normal strength. No cranial nerve deficit or sensory deficit. Psychiatric: She has a normal mood and affect. Her behavior is normal." (Ex. 25 at UCLAHEALTH_0000011.)

The records also explicitly state that there was no evidence that Plaintiff had been punched. The UCLA medical records state as follows: "Pt reports being puched [sic] in face on left, then LOC and awoke on ground with left sided neck pain, c/o 10/10 pain. ***However no e/o trauma to face or head. CT brain/face and xrays of c spine are all negative for any significant injury.*** Chronic htn off meds, also of very angry after reported altercation to LAPD here. Stable for d/c." (Ex. 25 at UCLAHEALTH_0000013.) (emphasis added). The records further state, "Patient states that she was assaulted yesterday evening by her employer; however, there is no eye witness account to the altercation. Medical workup including CT face/brain with no evidence of fracture. [O]ffered for the patient to file a police report, she declined." (Ex. 25 at UCLAHEALTH_0000023.)

Finally, Plaintiff's own statements to the UCLA medical providers also directly contradict her allegations in this case. While Plaintiff alleges that she was knocked unconscious, the records state that "She denies any LOC or fall 2/2 assault." (Ex. 25 at UCLAHEALTH_0000020.)

In summary, the contemporaneous and objective records of three government

agencies—the LAFD, the LAPD, and UCLA Medical Center—all refute Plaintiff's claims and indicate that she was never struck by Williams and that she suffered no injuries.

### 3.    Intentional Infliction Of Emotional Distress

#### (a)    Elements Of The Claim

"A cause of action for intentional infliction of emotional distress exists when there is

(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress;

(2) the plaintiff's suffering severe or extreme emotional distress; and

(3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'

A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'"

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009); *see also* California Civil Jury Instruction (CACI) No. 1600.

#### (b)    Summary Of Evidence In Opposition

Plaintiff contends that Williams struck her in the face in September 2014 and that she lost consciousness and fell to the ground.  However, in addition to numerous internal contradictions and a complete lack of eyewitness corroboration, Plaintiff's story is completely refuted by the contemporaneous EMT, police, and medical reports—all of which indicate that Plaintiff suffered no injury at all.

An EMT from LAFD was called to the scene at the time Plaintiff alleges she was injured.  The LAFD report indicates that Plaintiff had suffered "[n]o obvious signs of trauma." (Ex. 2 at Triplett 00058.)  Plaintiff's Glascow Coma Score was 15 (the highest possible), indicating that she was fully alert, conscious, responsive, and

1  functioning regularly at the time.  (*Id.*)

2      The contemporaneous report from the LAPD likewise indicates that "Vict did

3  not complain of any pain to her face and did not have any injuries to her face."  (Ex.

4  5 at Triplett000019.)  It states further that "Dr. Halem did not obs any injuries to

5  Vict's face."  (*Id.*)  The police report states simply, "Evid.: 0."  (*Id.*)  Additionally,

6  on the first page of the report, there is a check mark next to a box stating, "No

7  Serious Injury To Victim."  (*Id.* at Triplett000018.)  The report adds that "[d]uring

8  the investigation, Vict did not appear to be making sense at times."  (*Id.* at

9  Triplett000019.)

10      Plaintiff was admitted to UCLA Medical Center shortly after the alleged

11  incident, and the medical records from that stay also directly contradict Plaintiff's

12  claims that Defendant punched her in the face.  The initial providers found no

13  evidence of trauma: "Physical Exam. Nursing note and vitals reviewed.

14  Constitutional: She appears well-developed and well-nourished. No distress.

15  Neurological: She is alert. She has normal strength. No cranial nerve deficit or

16  sensory deficit. Psychiatric: She has a normal mood and affect. Her behavior is

17  normal."  (Ex. 25 at UCLAHEALTH_0000011.)

18      The records also explicitly state that there was no evidence that Plaintiff had

19  been punched.  The UCLA medical records state as follows: "Pt reports being

20  puched [sic] in face on left, then LOC and awoke on ground with left sided neck

21  pain, c/o 10/10 pain. ***However no e/o trauma to face or head. CT brain/face and***

22  ***xrays of c spine are all negative for any significant injury.*** Chronic htn off meds,

23  also of very angry after reported altercation to LAPD here. Stable for d/c."  (Ex. 25

24  at UCLAHEALTH_0000013.) (emphasis added). The records further state, "Patient

25  states that she was assaulted yesterday evening by her employer; however, there is

26  no eye witness account to the altercation. Medical workup including CT face/brain

27  with no evidence of fracture. [O]ffered for the patient to file a police report, she

28  declined."  (Ex. 25 at UCLAHEALTH_0000023.)

Finally, Plaintiff's own statements to the UCLA medical providers also directly contradict her allegations in this case. While Plaintiff alleges that she was knocked unconscious, the records state that "She denies any LOC or fall 2/2 assault." (Ex. 25 at UCLAHEALTH_0000020.)

In summary, the contemporaneous and objective records of three government agencies—the LAFD, the LAPD, and UCLA Medical Center—all refute Plaintiff's claims and indicate that she was never struck by Williams and that she suffered no injuries.

### 4.    Negligence

#### (a)    Elements Of The Claim

"The elements of a cause of action for negligence are . . .

(a) a legal duty to use due care;

(b) a breach of such legal duty; [and]

(c) the breach as the proximate or legal cause of the resulting injury."

*Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (cleaned up); *see also* California Civil Jury Instruction (CACI) No. 400.

#### (b)    Summary Of Evidence In Opposition

Plaintiff contends that Williams struck her in the face in September 2014 and that she lost consciousness and fell to the ground.  However, in addition to numerous internal contradictions and a complete lack of eyewitness corroboration, Plaintiff's story is completely refuted by the contemporaneous EMT, police, and medical reports—all of which indicate that Plaintiff suffered no injury at all.

An EMT from LAFD was called to the scene at the time Plaintiff alleges she was injured.  The LAFD report indicates that Plaintiff had suffered "[n]o obvious signs of trauma." (Ex. 2 at Triplett 00058.)  Plaintiff's Glascow Coma Score was 15 (the highest possible), indicating that she was fully alert, conscious, responsive, and functioning regularly at the time.  (*Id*.)

The contemporaneous report from the LAPD likewise indicates that "Vict did

not complain of any pain to her face and did not have any injuries to her face." (Ex. 5 at Triplett000019.) It states further that "Dr. Halem did not obs any injuries to Vict's face." (*Id.*) The police report states simply, "Evid.: 0." (*Id.*) Additionally, on the first page of the report, there is a check mark next to a box stating, "No Serious Injury To Victim." (*Id.* at Triplett000018.) The report adds that "[d]uring the investigation, Vict did not appear to be making sense at times." (*Id.* at Triplett000019.)

Plaintiff was admitted to UCLA Medical Center shortly after the alleged incident, and the medical records from that stay also directly contradict Plaintiff's claims that Defendant punched her in the face. The initial providers found no evidence of trauma: "Physical Exam. Nursing note and vitals reviewed. Constitutional: She appears well-developed and well-nourished. No distress. Neurological: She is alert. She has normal strength. No cranial nerve deficit or sensory deficit. Psychiatric: She has a normal mood and affect. Her behavior is normal." (Ex. 25 at UCLAHEALTH_0000011.)

The records also explicitly state that there was no evidence that Plaintiff had been punched. The UCLA medical records state as follows: "Pt reports being puched [sic] in face on left, then LOC and awoke on ground with left sided neck pain, c/o 10/10 pain. ***However no e/o trauma to face or head. CT brain/face and xrays of c spine are all negative for any significant injury.*** Chronic htn off meds, also of very angry after reported altercation to LAPD here. Stable for d/c." (Ex. 25 at UCLAHEALTH_0000013.) (emphasis added). The records further state, "Patient states that she was assaulted yesterday evening by her employer; however, there is no eye witness account to the altercation. Medical workup including CT face/brain with no evidence of fracture. [O]ffered for the patient to file a police report, she declined." (Ex. 25 at UCLAHEALTH_0000023.)

Finally, Plaintiff's own statements to the UCLA medical providers also directly contradict her allegations in this case. While Plaintiff alleges that she was

DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

knocked unconscious, the records state that "She denies any LOC or fall 2/2 assault." (Ex. 25 at UCLAHEALTH_0000020.)

In summary, the contemporaneous and objective records of three government agencies—the LAFD, the LAPD, and UCLA Medical Center—all refute Plaintiff's claims and indicate that she was never struck by Williams and that she suffered no injuries.

## 5. Constructive Wrongful Termination In Violation Of Public Policy

### (a) Elements of the Claim

"To establish this claim, plaintiff must prove all of the following:

1. That plaintiff was employed by defendant;

2. That plaintiff was subjected to working conditions that violated public policy;

3. That defendant intentionally created or knowingly permitted these working conditions;

4. That these working conditions were so intolerable that a reasonable person in plaintiff's position would have had no reasonable alternative except to resign;

5. That plaintiff resigned because of these working conditions;

6. That plaintiff was harmed; and

7. That the working conditions were a substantial factor in causing plaintiff's harm.

To be intolerable, the adverse working conditions must be unusually aggravated or involve a continuous pattern of mistreatment. Trivial acts are insufficient."

*See* California Civil Jury Instruction (CACI) No. 2432.

### (b) Summary of Evidence In Opposition

Plaintiff cannot establish her fanciful claim that she was in Los Angeles because she was working for Williams as an assistant. Williams has employed the

same assistant, Lena Smith, for decades.  Smith will testify at trial that she would have known if Plaintiff was performing services for Williams, and that Plaintiff was never performing services for Williams.  Williams will testify that he met with Plaintiff because Plaintiff had, under false pretenses, reached out to him about helping support her comedy career, and he agreed to meet with her.

Critically, Plaintiff has absolutely no evidence whatsoever that Williams employed her: no offer letter, no contract, no emails, no texts, no paystubs, no tax records, no cashed checks, and no evidence of services rendered at all.  Accordingly, Plaintiff's fabricated claim that Williams employed her will fail to establish the first element of her claim—that she was employed by Williams.

Even if Plaintiff somehow establishes that Williams employed her (which she cannot), her constructive discharge claim is predicated on her claim that Williams punched her in the face, which is disproven by extensive documentary evidence as discussed above.  Plaintiff's story is completely refuted by the contemporaneous EMT, police, and medical reports—all of which indicate that Plaintiff was never struck by Williams and suffered no injury at all.

An EMT from LAFD was called to the scene at the time Plaintiff alleges she was injured.  The LAFD report indicates that Plaintiff had suffered "[n]o obvious signs of trauma." (Ex. 2 at Triplett 00058.)  Plaintiff's Glascow Coma Score was 15 (the highest possible), indicating that she was fully alert, conscious, responsive, and functioning regularly at the time.  (*Id*.)

The contemporaneous report from the LAPD likewise indicates that "Vict did not complain of any pain to her face and did not have any injuries to her face."  (Ex. 5 at Triplett000019.)  It states further that "Dr. Halem did not obs any injuries to Vict's face."  (*Id*.)  The police report states simply, "Evid.: 0."  (*Id*.)  Additionally, on the first page of the report, there is a check mark next to a box stating, "No Serious Injury To Victim."  (*Id*. at Triplett000018.)  The report adds that "[d]uring the investigation, Vict did not appear to be making sense at times."  (*Id*. at

Triplett000019.)

Plaintiff was admitted to UCLA Medical Center shortly after the alleged incident, and the medical records from that stay also directly contradict Plaintiff's claims that Defendant punched her in the face. The initial providers found no evidence of trauma: "Physical Exam. Nursing note and vitals reviewed. Constitutional: She appears well-developed and well-nourished. No distress. Neurological: She is alert. She has normal strength. No cranial nerve deficit or sensory deficit. Psychiatric: She has a normal mood and affect. Her behavior is normal." (Ex. 25 at UCLAHEALTH_0000011.)

The records also explicitly state that there was no evidence that Plaintiff had been punched. The UCLA medical records state as follows: "Pt reports being puched [sic] in face on left, then LOC and awoke on ground with left sided neck pain, c/o 10/10 pain. ***However no e/o trauma to face or head. CT brain/face and xrays of c spine are all negative for any significant injury.*** Chronic htn off meds, also of very angry after reported altercation to LAPD here. Stable for d/c." (Ex. 25 at UCLAHEALTH_0000013.) (emphasis added). The records further state, "Patient states that she was assaulted yesterday evening by her employer; however, there is no eye witness account to the altercation. Medical workup including CT face/brain with no evidence of fracture. [O]ffered for the patient to file a police report, she declined." (Ex. 25 at UCLAHEALTH_0000023.)

Finally, Plaintiff's own statements to the UCLA medical providers also directly contradict her allegations in this case. While Plaintiff alleges that she was knocked unconscious, the records state that "She denies any LOC or fall 2/2 assault." (Ex. 25 at UCLAHEALTH_0000020.)

In summary, the contemporaneous and objective records of three government agencies—the LAFD, the LAPD, and UCLA Medical Center—all refute Plaintiff's claims and indicate that she was never struck by Williams and that she suffered no injuries.

## III.    ANTICIPATED EVIDENTIARY ISSUES [16-4.2(h)]

Defendant has identified the primary known disputed evidentiary issues in Defendant's Motions in Limine ("MIL") Nos. 1 through 4.  [Dkts. 138, 139, 141, 142.]  Those issues include the exclusion of certain evidence not timely produced in discovery (Defendant's MIL No. 1 [Dkt. 138]), the exclusion of expert witnesses not previously identified or disclosed (Defendant's MIL No. 2 [Dkt. 139]), the exclusion of unreliable and altered documents purportedly derived from Plaintiff's cell phone but produced in non-original formats (Defendant's MIL No. 3 [Dkt. 141]), and the exclusion of alleged prior bad acts and allegations thereof (Defendant's MIL No. 4 [Dkt. 142]).

## IV.    BIFURCATION ISSUES [16-4.3]

Defendant does not identify any issue that should be bifurcated at this time.

## V.    JURY TRIAL DEMAND

Both parties demand a jury trial on all claims triable by a jury.

## VI.    ATTORNEY FEES [16-4.5]

Attorneys' fees are not available under any claim or defense in this matter.

## VII.    CONCLUSION/RESERVATIONS

Defendant reserves all rights to amend this Memorandum of Contentions of Fact and Law based upon the witnesses, exhibits, arguments, and contentions made by Plaintiff in her Memorandum of Contentions of Fact and Law and in other trial documents, or later adducted evidence not previously disclosed by Plaintiff.

1    DATED:  August 26, 2024      EISNER, LLP

By: _____
JEREMIAH REYNOLDS
ZACHARY T. ELSEA
Attorneys for Defendant
MICAH WILLIAMS p/k/a KATT
WILLIAMS